UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| STEVE WHITLOW, *et al.* | |
| Plaintiffs, | |
| v. | No.: 04-3211 |
| TIMOTHY MARTIN, MICHAEL R. STOUT, SCOTT DOUBET and GARY HANNIG, in his official capacity as Secretary of Transportation, | |
| | Hon. MICHAEL MIHM |
| Defendants | JURY TRIAL REQUESTED |

**PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEY'S FEES AND COSTS**

I.   FACTUAL BACKGROUND

Following a bifurcated jury trial on the issues of liability, the jury returned a verdict for the plaintiffs and against the defendants in this cause on February 17, 2011. After the verdicts were returned, plaintiffs settled the remedy claims with the defendants and with the Illinois Department of Transportation. The settlement agreements provide in part that this petition for attorneys' fees and costs may be determined by the court.

II.   LEGAL STANDARD

Absent very unusual circumstances, a prevailing party in suits brought under 42 U.S.C. § 1983 is entitled to reasonable attorney's fees and costs, pursuant to 42 U.S.C. § 1988. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 417 (1978). The

purpose of enacting § 1988 "is to ensure effective access to the judicial process for person with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 428 (1983). Under this section, a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Id*. A plaintiff who achieves some of the benefit it sought on any significant issue in the litigation may be considered the prevailing party for the purpose of attorney's fees. *Id.* at 433.

Attorney's fees are specified as "the sum total of plaintiff's attorney's fees derived from" an action. *Baumgarden v. Challenge Unlimited, Inc.,* 2006 WL 539514 at *3. In calculating a reasonable attorney's fee, the Court has a common and accepted framework, which involves three steps: "making a threshold determination regarding who is a prevailing party; determining a "lodestar figure" comprised of a reasonable fee multiplied by a reasonable number of hours expended on the litigation; and adjusting the "lodestar figure" upward or downward based on a variety of factors." *Barbee v. Christy-Foltz*, 2011 WL 285617 (C. D. Ill. 2011).

The facts of each case are used to determined the amount of the fee to be awarded to the plaintiff's attorney. *Hensley*, 461 U.S. at 430. The reasonableness of attorney's fees are to be viewed in light of all the circumstances for the time and effort expended by the prevailing plaintiff. *Dunning v. Simmons*, 62 F.3d 863, 973 (7th Cir. 1995) citing : *Blanchard*, 489 U.S. at 93. The reasonableness of attorney's fees are not awarded only in proportion to damages. *Dunning*, 62 F.3d at 873, citing: *Alexander v. Gerhardt*, 40 F.3d 187, 194 (7th Cir. 1994).

*FELDMAN, WASSER DRAPER & COX*
1307 S. Seventh St.
Post Office Box 2418
Springfield, IL 62705
217/544-3403

2

Congress intended the statutory fee awards to be adequate to attract competent counsel. *City of Riverside v. Rivera*, 477 U.S. 561, 580 (1986). "Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." *City of Riverside*, 477 U.S. at 574. "Because damage awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, to depend on obtaining substantial monetary relief, but instead recognized that reasonable attorney's fees under § 1988 are not conditioned upon and need not be proportionate to an award of money damages." *City of Riverside*, 477 U.S. at 575. Congress determined that in order to ensure that people with legitimate civil rights grievances would be represented, it would be necessary to compensate lawyers for all time reasonably expended on a case. *Id*.

The enactment of § 1988 was an acknowledgment by Congress that civil rights cases (unlike tort or anti trust cases) do not provide a plaintiff with a large recovery from which he can pay his attorney. *City of Riverside*, 477 U.S. at 577. By enacting § 1988, Congress was ensuring that competent attorney's" would be willing to represent persons with legitimate civil rights grievances." *Id*. at 578.

When attorney's fees were not paid as they were accumulated, the Court can calculate attorney's fees either at the attorney's current rate or at the rate at the time the services were performed, plus interest. *Smith v. Village of Maywood,* 17 F.3d 219, 221(1994).  See also: *Lightfoot v. Walker,* 827 F.2d 516 (2004).

*FELDMAN, WASSER DRAPER & COX*
1307 S. Seventh St.
Post Office Box 2418
Springfield, IL 62705
217/544-3403

3

### III.   ARGUMENT

Following a bifurcated jury trial on the issues of liability, the jury returned a verdict for the plaintiffs and against the defendants in this cause on February 17, 2011, thus making the plaintiffs prevailing parties under 42 U.S.C. § 1988. As a threshold matter, Plaintiffs are entitled to reasonable attorney's fees. Therefore, the Court must determine the correct amount to award Plaintiff for attorney's fees. Counsel for a prevailing party should be paid in the same manner as if the attorney was being paid by a traditional paying client - for all time reasonably spent on the matter. *Blanchard v. Bergeron*, 489 U.S. 87. 91 (1989).

When determining the amount of a reasonable fee, the most useful starting point is taking the number of hours reasonably expended on the litigation, and then multiplying that number by the attorney's reasonable hourly rate. *Hensley*, 461 U.S. at 433. Awarding a reasonable hourly rate is important in civil rights cases, not only because of the important societal benefit these cases provide, but also due to the reluctance of attorneys to take on employment discrimination cases. In *City of Riverside v. Rivera,* the Supreme Court reviewed the factors it had established in awarding attorney's fees, and in doing so, it sets forth the intent of fee shifting in civil rights cases. *City of Riverside*, 477 U.S. at 561. The Court in *City of Riverside* rejected the notion that "civil rights action for damages constitutes nothing more than a private tort suit benefitting only the individual plaintiffs whose rights were violated." *City of Riverside*, 477 U.S. at 574. "Congress expressly recognized that a plaintiff who obtained relief in a civil rights lawsuit does so not for himself alone but also as a

*FELDMAN, WASSER*
*DRAPER & COX*
1307 S. Seventh St.
Post Office Box 2418
Springfield, IL 62705
217/544-3403

4

private attorney general, vindicating the policy that Congress considered of the highest importance." *Id.* at 575. The Court went on to say that "Congress enacted Section 1988 specifically because it found that the private market for legal services failed to provide many victims of civil rights violations with effective access to the judicial process." *Id.* at 576.

*City of Riverside* illustrates the principle that litigating civil rights cases provides a public benefit to all of society, not just the specific individuals involved. A "successful civil rights plaintiff often secures important social benefits," whether or not these are reflected in small damage awards. *City of Riverside*, 477 U.S. at 574. Due to the importance of civil rights cases, and Congress' recognition that many victims of civil rights violations cannot afford to purchase legal services in the private market, Congress established § 1988 to encourage attorneys to bring these claims. *Id.*

"The reasonable hourly rate used in calculating the lodestar must be based on the market rate for the attorney's work. 'The market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question.' " *McNabola v. Chicago Transit Authority,* 10 F.3d 501, 519 (7th Cir. 1993) quoting *Eddleman v. Switchcraft, Inc.,* 965 F.2d 422, 424 (7th Cir. 1992). The market rate for civil rights cases may be different than other cases due to both the importance of the case, and the lack of attorneys participating in these types of cases. Detailed above, Congress and the Courts have recognized that civil rights cases play an important societal role, but as shown through the affidavits attached to the motion as exhibits, attorneys performing this type of work are scarce.

*FELDMAN, WASSER DRAPER & COX*
1307 S. Seventh St.
Post Office Box 2418
Springfield, IL 62705
217/544-3403

5

There are few lawyers practicing in the area of employment law, civil rights actions, administrative law or complex litigation on behalf of individuals against businesses or governmental agencies or officials. Typically, the size of damage awards in civil rights cases are often not large enough to encourage settlement by the employers, and as a result, most cases must proceed to trial. Civil rights cases are particularly difficult due to the number of motions filed, the various immunities that apply to governmental bodies or officials, and the difficulty in obtaining cooperation for discovery or pretrial preparation. Due to the importance of civil rights lawsuit, the difficulty of the cases, and the lack of attorneys practicing this particular type of law, the reasonable hourly rate may be higher than the reasonable hourly rate charged in other types of litigation.

In this case, the hourly rate that is reasonable for the three trial attorneys is $350.00 . As evidenced by the Affidavits of Attorneys Draper, Feldman and Craven, their experience and success justifies this rate.

In addition to the affidavits of Attorneys Draper, Feldman, Craven. Plaintiffs offer the Laffey Matrix as evidence of reasonable hourly rates. The Laffey Matrix is a table of hourly rates for attorneys and paralegals in the Washington, D.C. areas prepared by the Civil Division of the United States Attorney's Office for the District of Columbia. *Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354, 371 (D.D.C. 1983). It is available online.[1] The Laffey Matrix is based on two variables: the year in which the litigation occurred and the number of years an attorney has practiced law. The Laffey

---

[1] See  http://www/justice.gov/usao/dc/Divisions/Civil_Division

*FELDMAN, WASSER DRAPER & COX*
1307 S. Seventh St.
Post Office Box 2418
Springfield, IL 62705
217/544-3403

6

FELDMAN, WASSER
DRAPER & COX
1307 S. Seventh St.
Post Office Box 2418
Springfield, IL 62705
217/544-3403

Matrix is commonly used to calculate hourly rates in statutory fee-shifting cases, and it is also used to calculate the "lodestar" hourly rate for attorney's fees. *Carr v. Tillery*, 2010 WL 1963398 (S.D. Ill. 2010). The Seventh Circuit has not yet addressed the utility of the Laffey Matrix, but numerous judges in both the Northern District and the Southern District of Illinois have considered the "Laffey Matrix as at least one factor in determining the reasonableness of hourly rates sought." *Hadnott v. City of Chicago*, 2010 WL 1499473 (N.D. Ill 2010); *See also, Berg v. Culhane*, 2011 WL 589631 (N.D. Ill. 2011); *Carr v. Tillery*, 2010 WL 1963398 (S.D. Ill. 2010).

Based on the Laffey Matrix, Attorneys Draper, Feldman and Craven, all with over twenty years of experience, would be entitled to an hourly fee of $475.00. While this number is generated for the Washington D.C. market, use of the Matrix has been accepted by both the Northern and the Southern Districts of Illinois as being at least "satisfactory evidence" of the prevailing rate. *Hadnott v. City of Chicago*, 2010 WL 1499473 (N.D. Ill. 2010). *See also, In re Trans Union Corp. Privacy Litig.*, No. MDL 1350,00 C 4729, 2009 WL 4799954, at 19 (N.D. Ill. 2009); *Catalan v. RBC Mortgage Co.*, 05 C 6920, 2009 WL 2986122, at 6 (N.D. Ill. 2009); *Decker v. Transworld Sys., Inc.*, 09 C 50073, 2009 WL 2916819, at 5 (N.D. Ill. 2009); *Robinson v. City of Harvey*, 99 C 3696, 2008 WL 4534158, at 7 (N.D. Ill. 2008); *Lopez v. City of Chicago*, 01 C 1823, 2007 WL 4162805, at 8. Plaintiff's counsel are entitled to receive an hourly rate comparable to that given by other courts in similar circumstances.

Plaintiff's counsel has been working on this case for seven years. When there has been a delay is receiving fees, awarding the current hourly rate for all work done

7

is justified. *Missouri v. Jenkins by Agyei,* 491 U.S. 274, 109 S.Ct. 2463 (1989). By awarding compensation at the present rate, this addresses the issues of attorneys increasing their fees due to rising overhead and expenses, and attorneys being faced with reduced purchasing power of the dollars earned but not received due to increasing inflation. *McPherson v. School District* 186, 465 F.Supp. 749, 759 (S.D. Ill. 1978). Since this has been a long-lasting case and Plaintiffs' have yet to be paid, current rates are appropriate.

In ensuring that the lodestar figure is correct, the Court in *Hensely* referenced the factors identified in *Johnson v. Georgia Highway Express Inc.*, which guide the court in determining if the lodestar figure should be reduced or enhanced based on the circumstances of the case. In *Johnson*, the Court used several factors as guidelines to analyze the fee request. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). When these factors are applied to the circumstances in this case, the lodestar figure stands:

1. Time and Labor. Plaintiffs' counsel have documented the extensive time and labor that was necessary for this case. This cause involved sixteen Plaintiffs, three Defendants against whom charges had to be proven, and seven years. The trial itself lasted six weeks, with additional time spent working out a settlement between the parties. All the time and labor was necessary to obtain a favorable jury verdict and settlement for the Plaintiffs, and in addition, the time spent was much lower than it could have been due to the experience of the attorneys involved.

2. Novelty and Difficulty. As previously stated, all employment discrimination cases are difficult due to unwillingness of employers to discuss settlement, the numerous amount of motions and pleadings filed, the lack of attorneys practicing this area of law, and the large costs involved. In addition, the standard for prevailing as a plaintiff is quite high. (See Attorney affidavits).

3. Skill requisite to perform the legal service properly. As discussed above, the skill required to achieve a positive result was enhanced due to the difficulty involved in employment discrimination cases. The attorneys believe their skill was needed to achieve the result obtained.

4. The preclusion of other employment by the attorneys. By working on this case for seven years and being engaged in a six week federal trial, Attorneys Draper, Feldman and Craven were all precluded from taking on other matters, including hourly billable cases with timely payment.

5. Customary fee. This point has been discussed throughout the memorandum.

6. Whether fee is fixed or contingent

7. Time limitations imposed by the client or circumstances. There were no time limitations imposed by the client, but there was a time crunch in terms of preparation for trial as is true for any serious trial work. In addition, this cause was set to go to trial in November of 2010. Prior to this date, Defendants' counsel indicated that they would like to engage

*FELDMAN, WASSER*
*DRAPER & COX*
1307 S. Seventh St.
Post Office Box 2418
Springfield, IL 62705
217/544-3403

9

in serious settlement discussions. Based on this representation, Plaintiffs' counsel delayed trial preparation and attempted to settle this matter. The settlement talks by Defendants' counsel turned out to be merely a ruse, with few settlement discussions ever occurring. In response, Plaintiffs' counsel then had to prepare for trial again, which ultimately began in January, 2011. Due to the actions of the Defendants, attorneys for the Plaintiffs were forced to spend time not only preparing for settlement discussions, but also preparing for trial.

8. Amount involved and results obtained. Plaintiffs' obtained entirely favorable results, with all sixteen Plaintiffs receiving verdicts against all three Defendants. Each Plaintiff received a settlement, each of which were also particularly good.

9. Experience. The attorneys' experience, etc. is set forth in great detail in the attorneys' affidavits and throughout this memorandum.

10. Undesirability. In their affidavits, the attorneys detail the problems inherent in employment cases in general, and explain why there is a real problem attracting competent attorneys to enforce basic rights. This has also been discussed above.

11. Nature and length of the professional relationship with the client. As stated, this cause has lasted for seven years. The attorneys' affidavits and the detailed billing explains in greater detail the nature and duration of the relationship with the client.

*FELDMAN, WASSER*
*DRAPER & COX*
1307 S. Seventh St.
Post Office Box 2418
Springfield, IL 62705
217/544-3403

10

12. Awards in similar cases. As described above, this award would be comparable to other compensation given in similar cases. The Laffey Matrix, which has been used by the Northern and Southern Districts would set the fee award at an hourly rate of $475.

As stated in *Hensley*, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Hensley*, 461 U.S. at 45. Plaintiffs' attorneys have detailed all the work put into this case and have detailed the costs incurred. After fighting with government employers for seven years, Plaintiffs received favorable verdicts for all sixteen Plaintiffs and against all three Defendants. This Court should conclude the hourly rates are reasonable and that the time included in the fee petition contributed to the overall success of the Plaintiff.

## CONCLUSION

For the reasons stated above the Plaintiff respectfully prays the court grant the Plaintiffs' Motion for Attorney's Fees and Costs.

            STEVE WHITLOW, *et al.*,  Plaintiffs

            By: /s *Carl R. Draper*
            Carl R. Draper, Bar Number 03128847
            Attorney for Steve Whitlow, *et al*, Plaintiffs
            Feldman, Wasser, Draper & Cox
            1307 S. Seventh Street, P.O. Box 2418
            Springfield, IL 62705
            Telephone: (217) 544-3403
            Fax: (217) 544-1593
            e-mail: cdraper@feldman-wasser.com

## CERTIFICATE OF SERVICE

      I hereby certify that on _____, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system which will send notification of such filing to the following:

Donald M. Craven
1005 North 7th Street
Springfield, IL 62702

Stephen R. Kaufmann
Michael P. Murphy
Hepler Broom
400 S. 9th St.
Suite 100
Springfield, IL 62701

John Haarlow
Novack and Macey
100 North Riverside Plaza
Chicago, IL 60606

Terrence J. Corrigan
Carrie L. Kinsella
500 S. Second St.
Springfield, IL 62701

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

NONE

*/s Carl R. Draper*
Carl R. Draper, Bar Number 03128847
Attorney for Steve Whitlow, *et al*, Plaintiffs
Feldman, Wasser, Draper & Cox
1307 S. Seventh Street, P.O. Box 2418
Springfield, IL 62705
Telephone: (217) 544-3403
Fax: (217) 544-1593
e-mail: cdraper@feldman-wasser.com

*FELDMAN, WASSER*
*DRAPER & COX*
1307 S. Seventh St.
Post Office Box 2418
Springfield, IL 62705
217/544-3403

12