UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVE WHITLOW, et al., | ) |
| | ) Case No. 04-3211 |
| Plaintiffs, | ) District Judge Michael M. Mihm |
| | ) |
| v. | ) Magistrate Judge Byron G. Cudmore |
| | ) |
| TIMOTHY MARTIN, et al., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR ATTORNEYS FEES AND COSTS**

Come now Defendants, by Stephen R. Kaufmann, Special Assistant Attorney General, and for their Response to Plaintiffs' Motion for Attorneys Fees and Costs (doc. 461), state as follows:

I. Introduction

1. On April 15, 2011, Plaintiffs filed their Motion for Attorneys Fees and Costs (doc. 461) and Memorandum of Law in Support of that Motion (doc. 462.) Defendants were allowed until May 26, 2011 to file their Response. *See* May 13, 2011 Minute Entry.

2. Defendants challenge both the hourly rate and the hours claimed by Plaintiffs' attorneys. As to the hourly rate, Plaintiffs have failed to meet their burden of establishing a proper reasonable hourly rate, and other evidence demonstrates that the hourly rate claimed by Plaintiffs is too high. Specifically, Plaintiffs' lawyers have established with this very Court their hourly rate in similar litigation in a pleading filed one month before this jury trial began. Notwithstanding their December, 2010 filing in a similar case, they now argue that their standard billing rate has increased from $250.00 an hour to between $350.00 and $475.00 an hour. With respect to the hours claimed, many hours are improperly included in the fee request, an

1

unreasonable number of hours was expended, many hours related to unsuccessful matters, and many time entries are inadequately documented. Defendants pray the Court exclude these hours, as is more fully described below.

3.  As an additional matter, Defendants also contend that the amount of Plaintiffs' attorneys' fees should be reduced in light of the relief recovered by Plaintiffs. While Defendants acknowledge Plaintiffs obtained a favorable jury verdict and were offered reinstatement, ultimately each Plaintiff recovered only a fraction of their total claim. This result was largely due to Plaintiffs' failure to properly and timely disclose a critical element of Plaintiffs' potential damages – their claim for reduced pension benefits – resulting in Plaintiffs' inability to recover such damages at trial. When the final settlement amounts are compared to Plaintiffs' demands and claims, Plaintiffs' "success" was minimal. While Plaintiffs obtained a favorable verdict, they were then barred from presenting a significant portion of claimed damages, which led to settlements for more reasonable terms. Plaintiffs' fee petition does not reflect the results actually achieved in the litigation.

## II.  Standard of Review

4.  This Court has wide discretion in determining the appropriate amount of attorneys fees and to adjust the fee award as necessary. *Spellman v. Bd. of Educ.*, 59 F.3d 642, 646 (7th Cir. 1995). In determining reasonable attorney fees, the starting point is the "lodestar" analysis – the number of hours reasonably expended by Plaintiffs' attorneys multiplied by their reasonable hourly rate. *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996). Thus, the Court must exclude hours that were "not reasonably expended on the litigation." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999). Fees "not reasonably expended" include "hours that are excessive, redundant, or otherwise unnecessary." *Id.* (citing

*Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939-40 (1983)). After determining the number of hours reasonably expended, the Court must determine the "reasonable hourly rate." *Spegon*, 175 F.3d at 554. In determining whether the claimed rates are reasonable, the court considers "the rate that lawyers of similar ability and experience in their community normally charge their paying clients for the type of work in question." *Harper v. City of Chicago Heights*, 223 F.3d 593, 604 (7th Cir. 2000) (quoting *Spegon*, 175 F.3d at 555). Evidence of the rates ordinarily charged by plaintiffs' attorneys are also relevant. *Commodity Futures Trading Comm'n v. Richards*, 1996 WL 515160, *2-3 (N.D. Ill. 1996).

5. Moreover, "[w]hen recovery is low enough in relation to the demand … the judge may jettison the lodestar apparatus and choose an appropriate fee using other means." *Cole v. Wodziak*, 169 F.3d 486, 488-89 (7th Cir. 1999) (citing *Farrar v. Hobby*, 506 U.S. 103, 114-15 (1992)). The Court may also reduce the lodestar calculation based on the relationship between the lodestar amount and the damages recovered. *See Divane v. Mitchell Security Systems, Inc.*, 2008 WL 938381, *1 (N.D. Ill. 2008) (citing *Moriarty v. Svec*, 233 F.3d 955, 967-968 (7th Cir. 2000) ("proportionality concerns are a factor in determining what a reasonably attorney's fee is."). The legislative history of Section 1988 specifically states that "a reasonable attorney's fee" award is one that is "adequate to attract competent counsel but … [that does] not produce windfalls to attorneys." *Blum v. Stevenson*, 465 U.S. 886, 896-97 (1984) (quoting S.Rep.No. 94-10011, p. 6 (1976)).

### III.  Argument

A. The Hourly Rates Sought are Not Reasonable

6. The Court must determine the "reasonable hourly rate" for Plaintiffs' attorneys in

this case. *Spegon*, 175 F.3d at 554-55. In determining whether the claimed rates are reasonable, the court considers that "[t]he reasonable hourly rate (or "market rate") for lodestar purposes is 'the rate that lawyers of similar ability and experience in their community normally charge their paying clients for the type of work in question.'" *Harper v. City of Chicago Heights*, 223 F.3d 593, 604 (7th Cir. 2000) (quoting *Spegon v. Catholic Bishop of Chicago,* 175 F.3d at 555 (quotations and citations omitted)).

    1.  <u>The Court Should Disregard the Laffey Matrix in this Springfield case.</u>

    7.      Initially, the Court should disregard Plaintiffs' references to the Laffey Matrix in determining the appropriate hourly rate for Plaintiffs' attorneys. The Laffey Matrix is used by a minority of courts to determine market rates. *See Smith v. Sheahan*, 556 F. Supp. 2d at 898 ("plaintiffs' counsel rely on the so-called 'Laffey Matrix,' which a minority of courts use to determine attorney's market rates. This court declines to use the Laffey matrix here, and instead follows the Seventh Circuit's clear guidance on the issue of reasonable hourly rates") (internal citations omitted). Moreover, "the Laffey Matrix has not been formally adopted in the Seventh Circuit, and its rates appear significantly higher than those typically awarded in this district." *Elusta v. City of Chicago*, 2010 WL 5157333, * 3 (N.D. Ill. 2010). The Court should use the general rules as stated in Seventh Circuit case law and reject the Laffey Matrix.

    8.      It should also initially be noted that the Court has to regard this as a "Springfield case," not a "Peoria case" for purposes of determining what hourly rate is reasonable. The case was filed in Springfield in September of 2004 and was litigated in Springfield until the case was assigned to this Court in Peoria in July of 2010. The parties consented to this case being tried in Peoria for the convenience of the Court and were more than willing to do so. However, that does not convert the case to a "Peoria case" for purposes of this important fee issue.

### 2. Plaintiffs Have Failed to Sustain Their Burden of Demonstrating a Reasonable Hourly Rate.

9. The reasonable hourly rate must be based on the market rate for services rendered. *Spegon*, 175 F.3d at 554-55 (citing *People Who Care*, 90 F.3d at 1310.) "[A]n attorney's actual billing rate for comparable work is presumptively appropriate for use as a market rate." *Elusta v. City of Chicago*, 2010 WL 5157333, *2 (N.D. Ill. 2010) (citing *Jeffboat, LLC v. Director, Off. of Workers' Comp. Progs.*, 553 F.3d 487, 490 (7th Cir. 2009)). The Court may also consider as evidence of the "market rate" "fee awards the attorney has received in similar cases." *Spegon*, 175 F.3d 544, 555 (citing *People Who Care*, 90 F.3d at 1310). "An attorney's self-serving affidavit alone cannot satisfy the plaintiff's burden of establishing the market rate for that attorney's services." *Spegon*, 175 F.3d at 556 (citing *Blum v. Stenson,* 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)).

10. In this case, the attorneys do have actual billing rates for comparable work. As noted in Judge Scott's Order of January 28, 2009 in the *Sottoriva v. Claps* case, No. 06-cv-3118, Mr. Draper's actual billing rates, as established through limited discovery, are as follows:

> Draper's disclosures reveal that Plaintiff paid $200.00 per hour for initial consultation and representation prior to entering into a contingency fee agreement in the instant litigation. *Objection to Attorney's Fee Petitions (d/e 76), Ex. A, Disclosures Concerning Attorney's Fees,* p. 1. The disclosures show that from 2005 through the end of 2007, seventy-nine clients were billed at a rate of $200.00 per hour. In 2005, one client was billed at a rate of $250.00 per hour, nine clients were billed at a rate of $180.00 per hour, and one client was billed at a rate of $150.00 per hour. *Id.,* p. 4-6. In 2006, all reported hourly billed clients were billed at a rate of $200.00 per hour. *Id.,* p. 6-7. In 2007, one tax client was billed at a rate of $180.00 and one other client was billed at a rate of $225.00. All other reported hourly billed clients for 2007 were billed at a rate of $200.00 per hour. *Id.,* p. 7-8. In 2008, six clients were billed at a rate of $200.00 per hour, eight clients were billed a rate of $225.00 per hour, and six clients were billed at a rate of $250.00 per hour. *Id.,* p. 8-9. Finally, the record reveals that Draper raised his standard hourly rate to $250.00 in June 2008, the month after Judgment was entered and the same month that the Motion for Attorneys Fees and Costs was filed. *Id.,* p. 2.

*Sottoriva v. Claps*, 06-3118, 2009 WL 211170 (C.D. Ill. Jan. 28, 2009), *vacated on other grounds*, 617 F.3d 971 (7th Cir. 2010). The Court awarded Mr. Draper $200.00 per hour in response to his request for $250.00 per hour. *Id.* Accordingly, as of January 28, 2009, the Central District of Illinois determined Mr. Draper's "market rate" to be $200.00 per hour.

11. It is also particularly telling that Mr. Draper filed a pleading in federal court in Springfield on December 6, 2010, just before this case went to trial, in the *Sottoriva v. Claps* case, in which he stated that his "standard hourly billing rate" was $250.00 per hour. Exhibit J.

12. Plaintiffs' counsel also stated in a settlement proposal in September 2010 that $250.00 per hour for partners and $150.00 per hour for associates were their "standard hourly rates," which were "consistent with fees that the federal court has awarded in this area for similar work in the past." Exhibit L.

13. Accordingly, Defendants have presented evidence of the appropriate market rate. Plaintiffs, on the other hand, have failed to do so.

14. Plaintiffs have failed to present competent evidence as to what rate their attorneys have received from paying clients, or what attorneys with comparable experience are customarily paid by paying clients, therefore failing to carry their burden of justifying the requested rates. *Elusta*, 2010 WL 5157333 at *4. This alone could result in the outright denial of their Motion for Attorneys Fees, *Commodity Futures Trading Comm'n*, 1996 WL 515160 at *2, although other cases provide guidance as to what an appropriate reasonable rate would be in this matter.

15. Plaintiffs were required to prove the "market rate" – that is, the rate their paying clients are charged. Notably, Plaintiffs attorneys do not in their Affidavits identify a single client who has in the past or currently pays them an hourly rate of $350.00 per hour or more. In fact, none of the affiants provides this information. Plaintiffs' attorneys Draper and Feldman claim

that $350.00 per hour is "the standard billing rate we currently offer our clients" "[f]or partners with more that [sic] 20 years of experience."  Doc. 461-1, ¶ 13.  Judge Scott's opinion in *Sottoriva*, Mr. Draper's more recent filing in *Sottoriva*, and the Plaintiffs' attorneys' letter in this case all dispute this contention.  Additionally, Plaintiffs' attorneys fail to state that any person at any time has accepted the "offer" to actually pay them $350.00 an hour for any services.  In any event, their "self-serving" affidavits alone cannot establish a reasonable hourly rate.

16.    Attorney Craven fails to aver any rate he normally charges clients, doc. 461-3, Ms. Leahy does not claim that any client pays her $350.00 per hour, doc. 461-4, and Mr. Baker alleges no rates, doc. 461-5.  Ms. Rhode states that her currently hourly rate in Southern Illinois is $350.00 per hour, but without stating for what type of work this rate applies.  Doc. 461-6.  Thus, even is she were in the correct community, her Affidavit fails to establish a reasonable rate for the work in question.  Notably, Ms. Rhode states she currently has a discrimination case against IDOT (¶ 10) but fails to state affirmatively that her client in *that* case pays her $350.00 per hour.  While these other attorneys may contend that the rates requested by Plaintiffs' attorneys are "reasonable," "[s]aying that the rate is "reasonable" without providing any concrete examples, however, is of limited use."  *Elusta v. City of Chicago*, 2010 WL 5157333 * 3 (N.D. Ill. Dec. 13, 2010).

17.    Even if Plaintiffs' attorneys may claim they maintain a contingent fee practice, they still failed to "submit affidavits from similarly experienced attorneys *attesting to the rates they charge paying clients for similar work*" as required.  Moreover, the Supreme Court has rejected the argument that an enhanced rate should be awarded because of the contingent nature of plaintiffs' attorneys fees.  *Blum v. Stenson*, 465 U.S. 886, 895 (1984).  *See also Elusta v. City of Chicago*, 2010 WL 5157333, * 2 (N.D. Ill. Dec. 13, 2010) ("Plaintiffs argue that they should

7

receive a premium on the usual hourly rate because the case was taken on a contingency basis, but the Supreme Court has rejected such a premium" (citing *City of Burlington v. Dague,* 505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) and *Perdue v. Kenny A. ex rel. Winn,* --- U.S. ----, ----, 130 S.Ct. 1662, 1673, 176 L.Ed.2d 494 (2010)). Plaintiffs' attorneys, however, do not only accept contingent-fee cases; they have hourly paying clients. *See* Exhibit C, a May 16, 2011 letter from Mr. Draper wherein he acknowledges that in hourly cases they work at lower rates. Plaintiffs' attorneys choose not to present to the Court their actual billing rates while claiming they should be awarded $350.00 per hour. Thus, Plaintiffs have failed to meet their burden of showing their hourly rate for comparable work (or any work).

18. Plaintiffs rely upon a ruling in *Barbee v. Christy-Foltz, Inc.*, No. 09-CV-2056 (C.D. Ill. 2011) that $350.00 per hour was a reasonable hourly rate for Mary Lee Leahy's services. Plaintiffs' attorneys claim that they have "similar qualifications and experience" as Ms. Leahy while noting that the order in *Barbee* provided for "lower rates for less experienced attorneys." Doc. 461 ¶ 2. As the Court is well aware from the proceedings in this case, Ms. Leahy was counsel for plaintiffs in the *Rutan* case and has unprecedented qualifications and experience in employment litigation. Moreover, she has been practicing law in Illinois since 1966 – 15 years more experience than Messrs. Draper and Craven and 7 years more experience than Mr. Feldman. Mere review of the affidavits filed by Plaintiffs demonstrates that Ms. Leahy is far more qualified and experienced in employment litigation and, thus, Plaintiffs' attorneys' hourly rate should be lower than hers.

19. Defendants suggest that the rate of $250.00 per hour for partners and $150.00 per hour for associates is reasonable in this case.[1] In fact, the Central District of Illinois has held that

---

[1] Plaintiffs claim $75.00 per hour for paralegal work. Defendants do not challenge the reasonableness of this rate.

8

"a reasonable rate for experienced litigators in an employment discrimination case" is $250.00 per hour for partners and $150.00 per hour for associates. *Baron v. Chrans*, No. 05-3240, doc. 223, p. 9 (C.D. Ill. December 12, 2008) (citing *Davis v. City of Springfield*, No. 03-3007 (C.D. Ill. March 20, 2008)); *See also* doc. 411 in the *Davis v. City of Springfield* case. In *Davis*, the Court noted that "market transaction information," which "represents the fee that a willing client pays," "is a more reliable measure of the appropriate market rate" than "opinions of value from other attorneys." *Davis*, doc. 411, p. 6. Indeed, the $250.00 rate requested in December 2010 in the *Sottoriva* case and the settlement letter in this case represent admissions of the highest appropriate rate.

20.     Notably, attorneys Draper and Craven attested in the *Davis* case (while this case was pending) that a reasonable hourly rate was $250.00 to $300.00 per hour. *See id.*; Exhibit D (Affidavits of Messrs. Draper and Craven). Further, the attorney awarded $250.00 per hour in the *Davis* case is one of Plaintiffs' affiants in this case, Shari Rhode, who now claims $350.00 per hour is reasonable. Defendants' proposed rate is actually higher than that proposed by Plaintiffs' attorneys themselves in November 2010, when Plaintiffs' counsel valued their time at $200.00 per hour. Doc. 344, filed November 17, 2010, p. 6 (in their Motion for Sanctions, claiming that "Plaintiffs' counsel have expended at least 100 hours of work on settlement issues *for a value of approximately $20,000.00.*") Defendants' proposed rate is also greater than the market rate determined by this Court in 2009.

21.     Finally, Defendants offer the Affidavit of Thomas H. Wilson (Exhibit K), defense attorney in this case, in which he testifies that partners in the HeplerBroom LLC law firm who worked on this case charged the rate of $200.00 per hour throughout the case. HeplerBroom LLC also charged $150.00 per hour for associates and $75.00 per hour for paralegals. This is

9

evidence of a reasonable hourly rate for a "Springfield case." Based on all of the above, Defendants' suggested rate of $250.00 per hour (a higher rate than defense counsel received) is entirely reasonable.

B. The Hours Requested are Not Reasonable.

22. Defendants do not dispute that Plaintiffs' attorneys spent significant amounts of time on this case. Defendants take exception, however, to Plaintiffs' argument that the great amount of time spent on the case by *defense counsel* should somehow justify the amount of hours claimed by Plaintiffs' attorneys. The fact that defense counsel had to often take significant time to respond to Plaintiffs' pleadings, to respond to or defeat requests for overbroad and irrelevant discovery, to review thousands of documents from the Office of the Governor (few or none of which were admissible at trial), to move for summary judgment on a voluminous record, and to vigorously defend their clients throughout does not translate into justification for the amount of hours claimed by Plaintiffs' attorneys.

23. Defendants specifically challenge the hours claimed on the following grounds: (a) time with respect to settled Plaintiff Hank Priester is not compensable; (b) time with respect to other cases and proceedings should be excluded; (c) many time entries are inadequately described and are too vague to be compensable; and (d) many time entries are redundant, excessive, or otherwise unreasonable or relate to unsuccessful matters and, therefore, should be excluded. The charts attached hereto as Exhibits F, G, H, and I set forth the challenged time entries in these four categories, and each category is discussed below.

1. Hank Priester Time Must be Excluded.

24. Hank Priester was formerly a Plaintiff in this case, but he settled long prior to

trial. The Settlement Agreement and General Release states that Plaintiff Priester "agrees to release and forever discharge" Defendants "from all actions, claims demands, … *attorneys' fees costs and expenses* which arose or could have arisen from the facts alleged in or claims made in this Action." Exhibit E, ¶ 2. The Settlement Agreement and General Release further expressly provides that "Plaintiff and his attorneys release, waive and relinquish any claims or rights to attorney's fees, expenses and costs from the Defendant allegedly incurred or due in the Actions pursuant to 42 U.S.C. Section 1988, or under any other statute, rule or common law provision." Exhibit E, ¶ 3.

25. Despite this unambiguous language, Plaintiffs' attorneys include time related to Priester's claim in their fee request. All of this time should be excluded. Additionally, Plaintiffs' attorneys' billing records indicate they already received a $25,000.00 payment from Mr. Priester. Exhibit A, p. 22, Oct 24, 2008. A chart detailing time related to Mr. Priester which should be excluded is attached as Exhibit F.

   2. <u>Time Spent with Respect to Other Proceedings or Matters Should be Excluded</u>

26. Many time entries indicate they were directly related to proceedings other than the instant case. Other time entries appear unrelated to this case, or at least the description does not sufficiently indicate a relationship to this case. Such time should be excluded, and is detailed in a chart attached as Exhibit G.

   3. <u>Inadequately Documented Time Should be Excluded</u>

27. Plaintiffs have the burden of demonstrating the fees sought are reasonable. In doing so, Plaintiffs must provide sufficient documentation for the Court to make a determination as to whether the specific task and associated fee are reasonable in light of the litigation in issue. *Hensley*, 464 U.S. at 433. The Court must eliminate all hours claimed that are "inadequately

explained." *Spanish Action Comm. of Chicago v. City of Chicago*, 811 F.2d 1129, 1138 (7th Cir. 1987). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.*

28. Fee records must identify "the subject matter of [the] time expenditures. *Id.* at 437 and n. 12. Vague statements such as "call to…," "review documents," "trial prep," and "conference with client" have been held insufficient. *Lopez v. City of Chicago*, 2007 WL 4162805, *7 (N.D. Ill. 2007) ("review documents" too vague); *DuPuy v. McEwen*, 648 F. Supp. 2d 1007, 1025 (N.D. Ill. 2009) ("trial prep" found to be vague); *Abbott v. Village of Winthrop Harbor*, 1999 WL 675292, * 4 (N.D. Ill. 1999) ("[e]vidence indicating a telephone conversation without identification of the subject matter is an inadequate documentation of hours"); *Newsome v. McCabe*, 2002 WL 1008472, * 2 and n. 5 (N.D. Ill. 2002) (allowing no recovery for vague entries, including "conference with JMS, Jones and Decker"); *Lawyer v. 86 Lumber Co.*, 1998 WL 1117903, *4 (N.D. Ill. 1998) ("conference with client" and "teleconference with client" lacked specificity and warranted reduction in fees); *Krislov v. Rednour*, 97 F. Supp. 2d 862, 870 (N.D. Ill. 2000) (deducting time "with descriptions too vague to determine what the time related to"); *Bovey v. City of Lafayette, Ind.*, 638 F. Supp. 640, 644-45 (N.D. Ind. 1986) (excluding hours "for failure to adequately document.")

29. Plaintiffs' attorneys' time entries contain many vague, general, insufficiently explained time descriptions. The Court should exclude all such entries, which are detailed in a chart attached as Exhibit H.

### 4. Hours Not "Reasonably Expended" and Unsuccessful Matters Should be Excluded

30. The Court must exclude hours claimed that were not "reasonably expended." *Hensley*, 461 U.S. at 434. As the Supreme Court explained, "[c]ases may be overstaffed, and the

12

skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Id.* Hours not properly billed to one's client are also not properly billed to one's adversary. *Id. See also Bovey v. City of Lafayette, Ind.*, 638 F. Supp. At 646 (excluding hours claimed that were "not billable to a client in the exercise of proper billing judgment and cannot therefore be charged to the defendant herein.") Further, claims that were unsuccessful are not subject to the award of fees under Section 1988. *Hensley*, 461 U.S. at 440.

31.     Many claimed hours were not "reasonably expended" by Plaintiffs' attorneys because they are excessive, redundant, or otherwise unnecessary; they would not be properly billed to Plaintiffs themselves and thus cannot be billed to Defendants. Alternatively, these hours related to unsuccessful matters. These hours predominantly relate to documents from the Office of the Governor subpoenaed by Plaintiffs. Over 200,000 documents were produced by the Office of the Governor, yet few, if any, were actually used at trial. This was largely because in arguing motions in limine, Plaintiffs' attorneys' could not articulate to the Court any reasonable relationship between the 16 Plaintiffs and the documents from the Office of the Governor. The State was required to expend substantial money in attorneys fees and costs to both Defendants' attorneys and the Office of the Governor's attorneys to participate in Plaintiffs' "fishing expedition." All time related to the Office of the Governor documents should be excluded.

32.     Other time included in this category includes time related to the depositions of Lon Monk and Joe Cini, and the potential deposition of John Harris. The Court excluded use of the Monk and Cini depositions at trial based on applicable law because the deponents invoked

the Fifth Amendment. Plaintiffs' attorneys were fully aware prior to these depositions that these witnesses were involved in the Rod Blagojevich criminal proceedings and would invoke the Firth Amendment. Thus, such time was not reasonably expended. Further, time related to the request to amend the Complaint to seek punitive damages shortly before trial, which was promptly denied by the Court, should also be excluded, along with time related to the Motion for Sanctions, which was denied.

33. Other entries included in this category appear to be excessive, redundant, clerical or administrative in nature, or otherwise improper. All time not "reasonably expended" or relating to unsuccessful matters is set forth in a chart attached as Exhibit I.

C. <u>The Fee Award Should be Reduced to Reflect a Reasonable Award in Relation to the Results Obtained.</u>

34. The final award must be "reasonable in relation to the overall results obtained by the plaintiff." *Spanish Action Comm.*, 811 F.2d at 1138. "If … a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley*, 461 U.S. at 436. Thus, while the Court may consider the twelve *Hensley* factors, "the most critical factor is the degree of success obtained." *Id.* "If the fee is not reasonable in light of the results obtained, the court may cut unnecessary hours or reduce the total fee to reach a reasonable number." *Elusta*, 2010 WL 5157333 at * 7.

35. Where there was a limited degree of success, the Court is warranted in reducing the lodestar. *Elusta*, 2010 WL 5157333 at *7 (40 percent reduction); *Spegon*, 175 F.3d 544 (7th Cir. 1999) (50 percent reduction); *Wilhelm v. City of Calumet City, IL*, 2007 WL 1560214 at * 3 (N.D. Ill. 2007) (70 percent reduction); *Carroll v. DeTella*, 1999 WL 413475 at * 5 (N.D. Ill. 1999) (80 percent reduction).

36. As noted above, Defendants acknowledge Plaintiffs obtained a favorable jury verdict and were offered reinstatement. Nonetheless, ultimately each Plaintiff recovered in settlement only a fraction of their total claim. As the Court is aware, after the jury verdict and prior to the scheduled damages phase of the trial, the Court ruled that Plaintiffs were barred from presenting any evidence regarding pension damages in the damages phase. March 1, 2011 Minute Entry. Plaintiffs were barred from recovering such damages "due to no element of damages notification." *Id.*

37. Plaintiffs' failure to properly and timely disclose this significant element of their damages greatly limited their potential for recovery at trial. By Defendants' calculations, the potential pension damages (total for all 16 Plaintiffs) that Plaintiffs were precluded from seeking at trial due to this ruling were in excess of $1,000,000.

38. This left Plaintiffs with a choice of proceeding to the damages phase and recovering lost wages and mental distress damages only from the jury, but no pension benefits. Plaintiffs who valued pension recovery over other damages had to choose to settle rather than proceed to the damages phase.

39. The limited success is reflected in comparison of Plaintiffs' potential recoveries at trial and their recoveries through settlement. Plaintiffs' combined lost wage claims alone totaled around $3.2 million. As noted above, the potential pension damages (total for all 16 Plaintiffs) that could not be recovered at trial were in excess of $1,000,000. Thus, the damages that were potentially recoverable at trial, when including mental distress damages of up to $100,000 each, totaled nearly $6 million. Without detailing all the settlements, Defendants state to the Court that all claims were resolved for approximately one-fifth of that amount.

40.     When the ultimate settlements are compared to the total damages initially sought by and potentially recoverable by Plaintiffs, Plaintiffs' success was relatively modest. Defendants urge the Court to consider the "degree of success" and reduce the fees accordingly.

D.  Defendants' Suggested Fee Award is Reasonable.

41.     Defendants respectfully suggest that the Court award total fees for all attorneys and staff in the sum of $650,000.00. This sum is arrived at by first deducting all hours discussed above and detailed in the attached charts and using the rate of $250.00 per hour for partners, $150.00 per hour for associates, and $75.00 for paralegals, arriving at a total of $1,076,387.50. *See* Exhibit M, a chart entitled "revised total," which contains these calculations. This total is then reduced by approximately 40% based upon the "degree of success." Defendants respectfully suggest $650,000.00 represents a reasonable total fee in this matter which is "adequate to attract competent counsel but … [does] not produce windfalls to attorneys." *Blum v. Stevenson*, 465 U.S. 886, 896-97 (1984) (quoting S.Rep.No. 94-10011, p. 6 (1976)).

WHEREFORE, Defendants pray that the Court enter an Order: ruling that $250.00 per hour for partners, $150.00 per hour for associates, and $75.00 per hour for paralegals is the appropriate market rate in this matter; deducting the hours described in this pleading and set forth in the attached charts from the total amount of compensable hours; reducing the lodestar amount so that it is reasonable in relation to the overall results obtained; awarding total fees for all attorneys and staff in the sum of $650,000.00; and granting such further relief in Defendants' favor as the Court deems just and proper.

16

Respectfully submitted,

HEPLERBROOM LLC

By: */s/ Stephen R. Kaufmann*
Stephen R. Kaufmann, #03126728
400 S. Ninth St., Suite 100
Springfield, IL 62701
(217) 528-3674 (telephone)
(217) 528-3964 (facsimile)
E-mail:  srk@heplerbroom.com
Attorneys for Defendants
Special Assistant Attorney General

**CERTIFICATE OF COMPLIANCE**

This document exceeds 15 pages in length allowed by Local Rule 7.1(B)(4)(a) for a memorandum in response to a motion; however, pursuant to Local Rule 7.1(B)(4)(b) –(d), the undersigned certifies that this document complies with the type volume limitation because it does not contain more than 7,000 words or 45,000 characters.  The word and character count of the word processing system used to prepare this document indicates there are 5,268  words and 33,281 characters (with spaces) in this document, including headings, footnotes, and quotations.

*/s/ Stephen R. Kaufmann*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of May, 2011, the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Donald M. Craven | don@cravenlawoffice.com |
| Carl R. Draper | cdraper@feldwass.com |
| Howard W. Feldman | hfeldman@feldwass.com |
| Stephen R. Kaufmann | srk@heplerbroom.com |
| John B. Haarlow, Jr. | JHaarlow@novackandmacey.com |
| Mitchell L. Marinello | MMarinello@novackandmacey.com |

*/s/ Stephen R. Kaufmann*